UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION AT KALAMAZOO

Civil Action No. 24-559

TUPELO REAL ESTATE INVESTMENTS, INC.;　　　　　　　　　　　PLAINTIFFS
WISL INVESTMENTS, INC.; AND
LTC PROPERTIES, INC.

v.

CHRISTOPHER C. RANDALL,　　　　　　　　　　　　　　　　　DEFENDANTS
INDIVIDUALLY AND AS TRUSTEE
OF THE CHRISTOPHER C. RANDALL
DECLARATION OF TRUST

JANELLE D. RANDALL, INDIVIDUALLY
AND AS TRUSTEE OF THE JANELLE
D. RANDALL DECLARATION OF TRUST

CHARLES E. RANDALL, INDIVIDUALLY
AND AS TRUSTEE OF THE CHARLES E.
RANDALL TRUST DATED AUGUST 3, 2010

BARBARA J. RANDALL, INDIVIDUALLY
AND AS TRUSTEE OF THE BARBARA J.
RANDALL TRUST DATED AUGUST 3, 2010

RANDALL RESIDENCE, LLC

   SERVE:  CHRISTOPHER C. RANDALL
         REGISTERED AGENT
         310 WHITE OAK ROAD
         LAWTON, MI 49065

RANDALL RESIDENCE OF STERLING HEIGHTS, LLC

    SERVE:    CHRISTOPHER C. RANDALL
                   REGISTERED AGENT
                   310 WHITE OAK ROAD
                   LAWTON, MI 49065

RANDALL RESIDENCE OF AUBURN HILLS, LLC

    SERVE:    CHRISTOPHER C. RANDALL
                   REGISTERED AGENT
                   310 WHITE OAK ROAD
                   LAWTON, MI 49065

RANDALL RESIDENCE OF TROY, LLC

    SERVE:    CHRISTOPHER C. RANDALL
                   REGISTERED AGENT
                   310 WHITE OAK ROAD
                   LAWTON, MI 49065

RANDALL RESIDENCE OF TIFFIN, LLC

    SERVE:    CHRISTOPHER C. RANDALL
                   REGISTERED AGENT
                   310 WHITE OAK ROAD
                   LAWTON, MI 49065

RANDALL RESIDENCE OF FREMONT, LLC

    SERVE:    CHRISTOPHER C. RANDALL
                   REGISTERED AGENT
                   310 WHITE OAK ROAD
                   LAWTON, MI 49065

RANDALL RESIDENCE OF WHEELERSBURG, LLC

    SERVE:    CHRISTOPHER C. RANDALL
                   REGISTERED AGENT
                   310 WHITE OAK ROAD
                   LAWTON, MI 49065

RANDALL RESIDENCE OF NEWARK, LLC

    SERVE:    CHRISTOPHER C. RANDALL
                      REGISTERED AGENT
                      310 WHITE OAK ROAD
                      LAWTON, MI 49065

RANDALL RESIDENCE OF MCHENRY, LLC

    SERVE:    CHRISTOPHER C. RANDALL
                      REGISTERED AGENT
                      310 WHITE OAK ROAD
                      LAWTON, MI 49065

## COMPLAINT

Plaintiffs Tupelo Real Estate Investments, Inc. ("Tupelo"), WISL Investments, Inc. ("WISL"), and LTC Properties, Inc. ("LTC Properties") (collectively Tupelo, WISL and LTC Properties are referred to as "Plaintiffs" and/or "Landlords"), for their Complaint against Defendants Christopher C. Randall, individually and as Trustee of the Christopher C. Randall Declaration of Trust, Janelle D. Randall, individually and as Trustee of the Janelle D. Randall Declaration of Trust; Charles E. Randall, individually and as Trustee of the Charles E. Randall Trust Dated August 3, 2010; Randall Residence, LLC ("Randall Residence") (Christopher Randall, Janelle D. Randall, Charles E. Randall and Randall Residence are collectively referred to as "Guarantors"); Barbara J. Randall, individually and as Trustee of the Barbara J. Randall Trust Dated August 3, 2010, (collectively Barbara J. Randall and the Trusts identified above are referred to as "Additional Randall Residence Parties"); Randall Residence of Sterling Heights, LLC ("Sterling Heights"); Randall Residence of Auburn Hills, LLC ("Auburn Hills"); Randall Residence of Troy, LLC ("Troy"); Randall Residence of Tiffin, LLC ("Tiffin"); Randall Residence of Fremont,

3

LLC ("Fremont"); Randall Residence of Wheelersburg, LLC ("Wheelersburg"); Randall Residence of Newark, LLC ("Newark"); Randall Residence of McHenry, LLC ("McHenry") (collectively, Sterling Heights, Auburn Hills, Troy, Tiffin, Fremont, Wheelersburg, Newark and McHenry are referred to herein as "Tenants" or individually, "Tenant") (together, Guarantors, Additional Randall Residence Parties, and Tenants are referred to as "Defendants") states as follows:

## INTRODUCTION

1.     This is a breach of contract action arising from Defendants' failures to perform their obligations under a transition and lease termination agreement related to certain licensed healthcare facilities that Tenants and Guarantors previously leased from Landlords.

## THE PARTIES

2.     Tupelo is a Delaware corporation with its principal place of business in California. Thus, for purposes of diversity of citizenship, Tupelo is a citizen of Delaware and California.

3.     WISL is a Wisconsin corporation with its principal place of business in California. Thus, for purposes of diversity of citizenship, WISL is a citizen of Wisconsin and California.

4.     LTC Properties is a Maryland corporation with its principal place of business in California. Thus, for purposes of diversity of citizenship, LTC Properties is a citizen of Maryland and California.

5.     Christopher Randall is an individual, a citizen and resident of Michigan, and Trustee of The Christopher C. Randall Declaration of Trust.

4

6. Janelle D. Randall is an individual, a citizen and resident of Michigan, and Trustee of The Janelle D. Randall Declaration of Trust.

7. Charles E. Randall is an individual, a citizen and resident of Michigan, and Co-Trustee of the Charles E. Randall Trust.

8. Randall Residence is a Michigan limited liability company with its principal place of business in Michigan. Randall Residence's members are citizens of Michigan. Thus, for purposes of diversity of citizenship, Randall Residence is a citizen of Michigan.

9. Barbara J. Randall is an individual, a citizen and resident of Michigan, and Co-Trustee of the Barbara J. Randall Trust.

10. Sterling Heights is a Michigan limited liability company with its principal place of business in Michigan. Sterling Heights' members are residents of Michigan. Thus, for purposes of diversity of citizenship, Sterling Heights is a citizen of Michigan.

11. Auburn Hills is a Michigan limited liability company with its principal place of business in Michigan. Auburn Hills' members are residents of Michigan. Thus, for purposes of diversity of citizenship, Auburn Hills is a citizen of Michigan.

12. Troy is a Michigan limited liability company with its principal place of business in Ohio. Troy's members are residents of Michigan. Thus, for purposes of diversity of citizenship, Troy is a citizen of Michigan and Ohio.

13. Tiffin is a Michigan limited liability company with its principal place of business in Ohio. Tiffin's members are residents of Michigan. Thus, for purposes of diversity of citizenship, Tiffin is a citizen of Michigan and Ohio.

14. Fremont is a Michigan limited liability company with its principal place of business in Ohio. Fremont's members are residents of Michigan. Thus, for purposes of diversity of citizenship, Fremont is a citizen of Michigan and Ohio.

15. Wheelersburg is a Michigan limited liability company with its principal place of business in Ohio. Wheelersburg's members are residents of Michigan. Thus, for purposes of diversity of citizenship, Wheelersberg is a citizen of Michigan and Ohio.

16. Newark is a Michigan limited liability company with its principal place of business in Ohio. Newark's members are residents of Michigan. Thus, for purposes of diversity of citizenship, Newark is a citizen of Michigan and Ohio.

17. McHenry is a Michigan limited liability company with its principal place of business in Illinois. McHenry's members are residents of Michigan, Thus, for purposes of diversity of citizenship, McHenry is a citizen of Michigan and Illinois.

## VENUE & JURISDICTION

18. The Court has personal jurisdiction over the Defendants because they are residents of Michigan, and/or because they are Michigan limited liability companies with their principal offices in Michigan, and/or because they are present and amenable to service of process in Michigan and this district, and/or because they have sufficient contacts with Michigan and have purposefully conducted activity within Michigan.

19. Subject matter jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332 as Plaintiffs are citizens of different states from Defendants and the amount in controversy exceeds $75,000, exclusive of interest and costs.

20. Specifically, the matter in controversy exceeds $75,000, exclusive of interest and costs, because Defendants owe Plaintiffs at least $4,650,000, exclusive of interest and costs, plus additional amounts.

21. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Defendants reside in this district and are Michigan limited liability companies with their principal offices in Michigan and/or because they are present and amenable to service of process in Michigan and this district, and or because they have sufficient contacts with Michigan and have purposefully conducted activity within Michigan and/or because a substantial part of the relevant events giving rise to this action occurred in Michigan and this district.

## FACTUAL BACKGROUND

22. Plaintiffs are owners and lessors of real property previously leased by Tenants and their affiliates to operate eight (8) assisted living facilities (the "Facilities")[1]. These facilities are located in Illinois, Michigan and Ohio.

23. The leases for the Facilities were governed by a Master Lease dated as of November 20, 2019 ("Original Lease") and subsequent amendments dated April 20, 2020 ("First Amendment to Original Lease"), January 1, 2021 ("Second Amendment to Original Lease") and February 14, 2022 ("Third Amendment to Original Lease") (collectively the Original Lease, First Amendment to Original Lease, Second Amendment to Original Lease and Third Amendment to Original Lease are the "Lease")[2].

24. In a Guaranty made as of November 20, 2019, (the "Guaranty"), the Guarantors guaranteed Tenants' performance and obligations under the Lease, including

---

[1] The facilities are located at (1) 13400 19 Mile Road, Sterling Heights, MI 48313 (the "Sterling Heights Facility"); (2) 3033 N. Squirrel Road, Auburn Hills, MI 48326 (the "Auburn Hills Facility"); (3) 2900 Corporate Drive, Troy, OH 45373 (the "Troy Facility"); (4) 781 Greenfield Street, Tiffin, OH 44803 (the "Tiffin Facility"); (5) 805 Buchanan Street, Fremont, OH 43420 (the "Fremont Facility"); (6) 900 Pirate Drive, Wheelersburg, OH 45694 (the "Wheelersburg Facility"); (7) 1065 Johnson Avenue, Newark, OH 43055 (the "Newark Facility"); (8) 3300 Charles J. Miller Memorial Hwy, McHenry, IL 60050 (the "McHenry Facility").

[2] The Lease contains sensitive commercial terms and has not been attached. It will be provided to the Court and Defendants upon request.

any indemnities or other obligations of Tenants that survive the expiration or earlier termination of the Lease.

25. However, during the term of the Lease, the Facilities informed Landlords that they were unable to perform under the Lease. Accordingly, agreements were reached to transfer the Facilities from Tenants to a new third-party operator and for Landlords and Tenants to terminate the Lease prior to its scheduled expiration.

26. On or about June 1, 2023, the parties entered into an Agreement Regarding Transition and Lease Termination ("Termination Agreement"), a copy of which is attached hereto as Exhibit A.

27. The Termination Agreement was specifically negotiated by the parties, with specific and separate consideration for the promises therein.

28. Defendants have repeatedly acknowledged their obligations under the Termination Agreement. The Termination Agreement was executed with the specific purpose of establishing that the Facilities would be transitioned to new third-party operators and that Defendants would be bound by specific requirements under the Termination Agreement, to cooperate with the transitions of the Facilities, and to pay a settlement fee due to the early termination of $4,650,000 (the "Settlement Fee").

29. The Settlement Fee relieved Defendants of an amount comprised of future lease payments that far exceeded the Settlement Fee.

30. Despite Plaintiffs' performance of their obligations and the satisfaction of all conditions precedent, Defendants have refused to fulfill their obligations under the Termination Agreement, and accordingly, Plaintiffs have suffered damages from Defendants' breaches of the Termination Agreement.

31. Tenants and Guarantors represented and warranted to Landlords that they applied for, and would use commercially reasonable efforts to pursue a distribution of ERC Funds to pay a portion of the Settlement Fee. Tenants and Guarantors represented to Landlords they expected to receive were in the aggregate amount of $3,937,000. The Additional Randall Residence Parties were to notify Landlords in writing, at least once per month, not later than the tenth (10th) calendar day of each month, and to report to Landlords on the status of the application for ERC Funds and the expected distribution of such funds.

32. Landlords provided notice to Defendants dated November 10, 2023 that it had received no such notices or reports. Landlords demanded in its November 10, 2023 letter that Defendants deliver to Landlords in writing a current report on the status of ERC funds as required by the Termination Agreement, including either confirmation that no ERC funds have been received by Defendants or an accounting of ERC funds received. *See* November 10, 2023 Notice attached as Exhibit B.

33. Landlords provide notice to Defendants dated January 16, 2024 that Defendants were required to make an installment payment of the Settlement Fee in the amount of $50,000 on or before January 1, 2024. This installment payment has not been received by Landlords. *See* January 16, 2024 Notice attached as Exhibit C.

34. Landlords provided further notice to Defendants in the January 16, 2024 Notice that they had yet to receive any notices or reports concerning the ERC Funds and the expected distribution of those funds. Landlords demanded that Defendants deliver in writing a current report on the status of the ERC Funds as required by the Termination Agreement within five (5) days of the January 16, 2024 Notice.

35. Through the date of this Complaint, Defendants have failed and refused to pay the obligations under the Termination Agreement.

## COUNT I – BREACH OF CONTRACT – TERMINATION AGREEMENT
**(Against All Defendants)**

36. Except to the extent inconsistent with the relief sought in this Count, Plaintiffs incorporate the allegations set forth above by reference.

37. The Termination Agreement is a valid and enforceable contract which exists between Plaintiffs and Defendants.

38. Plaintiffs have performed all of their obligations under the Termination Agreement.

39. Defendants were provided notice and had knowledge of the breaches of the Termination Agreement and never addressed or remedied the same.

40. Without legal justification or excuse, Defendants failed and refused to fulfill its obligations under the Termination Agreement, and have materially breached the Termination Agreement by, among other things, not making payment of amounts due and owing to Plaintiffs under it, including the Settlement Fee.

41. As a direct and proximate result of the material breaches of the Termination Agreement by Defendants, Plaintiffs have suffered damages in an amount in excess of this Court's jurisdictional minimum to be proven at trial. Pursuant to the Termination Agreement, Plaintiffs are entitled to their attorneys' fees and costs.

42. Plaintiffs are therefore entitled to judgment and damages against Defendants, jointly and severally, pre-judgment and post-judgment interest, costs of collection, including reasonable attorneys' fees, and all other costs and expenses incurred.

## COUNT II – UNJUST ENRICHMENT
### (Against All Defendants)

43. Except to the extent inconsistent with the relief sought in this Count, Plaintiffs incorporate the allegations set forth above by reference.

44. By entering into the Termination Agreement, Plaintiffs conferred considerable benefits on Defendants.

45. Defendants knew of these benefits, and it would be unjust to permit the Defendants to retain the benefits without payment to Plaintiffs of the Settlement Fee to which Plaintiffs are entitled.

46. Plaintiffs are therefore entitled to judgment and damages against Defendants, jointly and severally, pre-judgment and post-judgment interest, costs of collection, including reasonable attorneys' fees, and all other costs and expenses incurred.

## COUNT III – ACCOUNTING

47. Except to the extent inconsistent with the relief sought in this Count, Plaintiffs incorporate the allegations set forth above by reference.

48. Pursuant to Section 7 of the Termination Agreement, the Defendants are obligated to provide certain financial reports and documentation to Plaintiffs regarding the ERC Funds and Plaintiffs are entitled to review and make copies of Defendants' books and records regarding the ERC Funds.

49. Plaintiffs are entitled to an accounting of all transactions related to the ERC Funds and all information required to be provided under the Termination Agreement, including the right for Plaintiffs to review and make copies of all of Defendants' books and records regarding the ERC Funds.

50. The balance of ERC Funds due from Defendants to Plaintiff can only be ascertained by a full accounting.

51. In the alternative, there exist circumstances of great complication between Defendants and Plaintiffs, inclusive of which is the fact that Defendants have made unavailable certain documents necessary to calculate the extent of Plaintiffs' damages, thus making a full accounting an adequate and necessary remedy.

## **DEMAND FOR RELIEF**

WHEREFORE, Plaintiffs therefore respectfully demand as follows:

A. Judgment in Plaintiffs' favor on all counts;

B. An award of compensatory damages to Plaintiffs of the amounts due to Plaintiffs from Defendants pursuant to the Termination Agreement, jointly and severally;

C. An award of compensatory damages to Tupelo of the amounts due to it from the Guarantors, jointly and severally;

D. Prejudgment and post-judgment interest;

E. An award of Plaintiffs' costs and attorneys' fees;

F. An accounting of all amounts received by Defendants in connection with the ERC Funds and an entry of an Order requiring Defendants to provide the reports and information and access to their books and records required by the Termination Agreement; and

G. All other appropriate relief to which Plaintiffs may be entitled.

Dated: May 29, 2024

        Respectfully submitted,

        FULTZ MADDOX DICKENS PLC

        /s/ *Benjamin C. Fultz*
        Benjamin C. Fultz
        101 South Fifth St., 27th Floor
        Louisville, KY 40202
        Phone: (502) 588-2000
        Fax: (502) 588-2020
        bfultz@fmdlegal.com

        *Counsel for Plaintiff*